

FILED

JAN - 9 2026

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

1

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF VIRGINIA**

**RICHMOND DIVISION**

*SAMIR ALMUDHAFER,*

Plaintiff (pro se),

v.

*SPOTSYLVANIA VOLUNTEER RESCUE SQUAD, INC. ("SVRS"),*

*KIMBERLY G. MADISON,*

*KELLY BARILL,*

*DR. COLEEN A. RICKABAUGH,*

Defendants.

Civil Action No. 3:25-cv-01057 (Judge Roderick C. Young)

**AMENDED COMPLAINT (Rule 8)**

(Jury Trial Demanded)

Plaintiff Samir Almudhafer ("Plaintiff"), appearing pro se, files this Amended Complaint and states as follows:

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts federal civil-rights claims.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Spotsylvania County, Virginia, within the Richmond Division, and Defendants reside and/or conduct relevant activities there.

4. Plaintiff seeks damages and declaratory and injunctive relief.

## II. PARTIES

5. Plaintiff Samir Almudhafer is an individual who resided in Spotsylvania County, Virginia during the events at issue and is now a university student in Boston, Massachusetts.

6. Plaintiff is an Arab-American of Egyptian and Iraqi descent and is Muslim.

7. Plaintiff has a disability within the meaning of the ADA, including ADHD, MDD, PTSD, and related conditions that substantially limit one or more major life activities such as

concentrating, thinking, and learning. Plaintiff was qualified to participate in and complete the EMT-Basic course with reasonable accommodations.

8. Defendant Spotsylvania Volunteer Rescue Squad, Inc. ("SVRS") is a Virginia nonprofit corporation operating in Spotsylvania County, Virginia. SVRS provides emergency medical services within the county's emergency-response system and operates an EMT-Basic training program.

9. Defendant Kimberly G. Madison ("Madison") was at all relevant times SVRS Chief and EMT Program Coordinator. She acted as a decision-maker for the EMT program.

10. Defendant Kelly Barill ("Barill") was at all relevant times an SVRS Captain and EMT instructor involved in Plaintiff's training and dismissal.

11. Defendant Dr. Coleen A. Rickabaugh ("Rickabaugh") was at all relevant times SVRS Operational Medical Director involved in or approving program decisions impacting Plaintiff.

12. Madison, Barill, and Rickabaugh are sued in their individual capacities for damages and in their official capacities for declaratory and injunctive relief to the extent applicable.

## III. FACTS

### A. SVRS acted under color of state law

13. SVRS provides emergency medical response services as part of Spotsylvania County's emergency services system, performing a traditional public-safety function.

14. SVRS operates in coordination with county emergency-response infrastructure (including county stations and county emergency services administration), and its officers function as leadership within that public-safety ecosystem.

15. Through this delegation and entwinement with county emergency services, SVRS and its leadership acted under color of state law for purposes of § 1983. See, e.g., *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001)* (entwinement); *Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337 (4th Cir. 2000)* (state action analysis for volunteer public-safety entity).

**B. Plaintiff enrolled, performed, and approached program completion**

16. Plaintiff enrolled in SVRS's EMT-Basic certification course in or about April 2025.

17. The course was part of a state-regulated EMT training pipeline intended to culminate in eligibility for EMT certification testing and credentialing.

18. Plaintiff successfully completed substantial coursework and clinical requirements and was on track to complete the program by late summer 2025.

**C. Defendants escalated an issue into accusations of dishonesty and "fraud"**

19. Plaintiff had a prior non-criminal trespass notice from Mary Washington Hospital issued when he was a minor, unrelated to patient care.

20. Plaintiff understood he could complete required clinical experiences at alternate approved sites, and he completed his required patient contacts without falsifying documentation.

21. On or about July 21, 2025, Madison sent Plaintiff an email accusing him in substance of "lying," "cheating," and/or "falsifying documentation" related to the hospital access issue. (Plaintiff will produce the email.)

22. Plaintiff promptly denied falsifying anything and explained his understanding that alternate sites were permitted and used.

## D. No fair process was provided before a career-impacting dismissal

23. On or about July 24, 2025, Plaintiff was confronted in a meeting with Madison and Barill. Plaintiff was not given written charges, a neutral decision-maker, or a structured hearing process.

24. On August 2, 2025, during a practical exam session, Madison and Barill pulled Plaintiff aside and informed him he was dismissed from the EMT program effective immediately.

25. Plaintiff received no contemporaneous written dismissal notice on August 2, no meaningful opportunity to contest the dismissal before an impartial decision-maker, and

no internal appeal mechanism that could actually reverse the decision.

26. The dismissal effectively prevented Plaintiff from completing the program on schedule and materially impaired his ability to continue the EMT credential pathway.

**E. Plaintiff engaged in protected activity, and Defendants escalated/stonewalled**

27. Immediately after dismissal, Plaintiff sought records and oversight and pursued redress, including submitting written records requests and contacting oversight entities.

28. Plaintiff sought legal assistance and pursued formal processes to challenge or review Defendants' actions.

29. After Plaintiff pursued records/oversight/legal redress, Defendants escalated their narrative and posture rather than provide transparent documentation or a fair reconsideration process.

30. On or about August 21, 2025, internal communications by Madison reflected a strategy to frame the dismissal to avoid scrutiny and to minimize "forensics" or challenge points (in substance, avoiding giving Plaintiff a "point from which he can protest"), and to harden the rationale as "plain and simple" ineligibility/non-disclosure. (Plaintiff will produce the email(s).)

31. On or about August 22, 2025, Defendants met with Plaintiff and attempted to obtain Plaintiff's signature on disputed paperwork presented after the dismissal; Defendants then characterized Plaintiff as "refusing" in a manner that served Defendants' narrative. (Plaintiff will produce the record/recording evidence in discovery.)

32. Defendants' actions after Plaintiff's protected activity were intended to deter Plaintiff from petitioning, pursuing records, and seeking redress.

## F. Disability and accommodation facts (ADA)

33. Plaintiff has ADHD and related conditions and has utilized or is eligible for disability accommodations in standardized testing and regulated education settings.

34. State EMS testing/credential pathways and standardized EMT testing processes routinely recognize disability accommodations (including for cognitive and psychomotor testing) for eligible candidates.

35. Defendants were aware, or should have been aware, that disability accommodations exist and that program decisions affecting a disabled student's access to completion/testing must be handled fairly and without discrimination.

36. Plaintiff requested, or attempted to request, reasonable accommodation and/or nondiscriminatory consideration of reasonable alternatives consistent with program

requirements.

37. Defendants refused to engage in a fair, interactive process and instead removed Plaintiff in a manner and on a rationale that excluded him from the program and its benefits.

## G. Harm

38. Plaintiff suffered substantial harm including loss of program completion opportunity on the expected timeline, interference with his EMT credential pathway, loss of related educational/employment opportunities, emotional distress, and stigma.

39. Defendants' accusations of dishonesty/fraud in connection with dismissal caused reputational harm that impaired Plaintiff's ability to pursue EMT-related opportunities.

## IV. CLAIMS FOR RELIEF

## COUNT I

42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process

(Against SVRS, Madison, Barill, and Rickabaugh)

40. Plaintiff incorporates FACTS ¶¶ 13–32 and 38–39.

41. Defendants acted under color of state law. FACTS ¶¶ 13–15.

42. Plaintiff was deprived of a protected interest without constitutionally adequate process when Defendants dismissed him from the program and imposed stigma-laden accusations connected to that dismissal. FACTS ¶¶ 21–26, 38–39.

43. Plaintiff was not provided adequate notice of charges, an opportunity to be heard at a meaningful time and in a meaningful manner, or a fair process before the deprivation. FACTS ¶¶ 23–26.

44. Defendants' conduct caused Plaintiff damages. FACTS ¶¶ 38–39.

**COUNT II**

42 U.S.C. § 1983 – First Amendment Retaliation (Speech/Petition)

(Against Madison, Barill, and Rickabaugh; and SVRS to the extent applicable)

45. Plaintiff incorporates FACTS ¶¶ 27–32 and 38–39.

46. Plaintiff engaged in protected activity by seeking records, contacting oversight entities, and pursuing legal redress. FACTS ¶¶ 27–29.

47. Defendants took adverse actions and escalated/stonewalled in response, including hardening the narrative to deter challenge and attempting to force a signature on disputed paperwork, and otherwise acting to deter Plaintiff from continuing protected activity.

FACTS ¶¶ 30–32.

48. Defendants' retaliatory conduct caused Plaintiff harm. FACTS ¶¶ 38–39.

**COUNT III**

42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection

(Against SVRS, Madison, Barill, and Rickabaugh)

49. Plaintiff incorporates FACTS ¶¶ 16–26 and 38–39.

50. Plaintiff was treated more harshly than similarly situated students and was subjected to irrational and selective enforcement in connection with dismissal and stigmatizing accusations. FACTS ¶¶ 16–26.

51. Plaintiff's protected characteristics, including Arab ethnicity/national origin and religion, provide a plausible inference that discriminatory animus played a role in Defendants' escalations and disparate treatment. FACTS ¶¶ 6, 16, 21–26.

52. Defendants' conduct caused Plaintiff harm. FACTS ¶¶ 38–39.

**COUNT IV**

Title II ADA – 42 U.S.C. § 12132 (Disability Discrimination / Failure to Accommodate)

(Against SVRS and Official-Capacity Defendants to the extent applicable)

53. Plaintiff incorporates FACTS ¶¶ 33–39.

54. Plaintiff is a qualified individual with a disability under the ADA. FACTS ¶¶ 7, 33–35.

55. SVRS, acting as a public entity/instrumentality performing a public function within county emergency services, excluded Plaintiff from participation in the program and its benefits, and/or denied him the benefits of services, programs, or activities, by reason of disability and by refusing reasonable accommodation/interactive process. FACTS ¶¶ 13–15, 33–37.

56. Defendants' conduct caused Plaintiff harm. FACTS ¶¶ 38–39.

## V. RELIEF REQUESTED

Plaintiff requests that the Court enter judgment in his favor and award:

A. Declaratory relief declaring that Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments and Title II of the ADA.

B. Injunctive relief requiring Defendants to (i) correct/expunge stigmatizing characterizations in Plaintiff's program-related records to the extent they exist, (ii) cease retaliatory conduct, and (iii) provide nondiscriminatory access and reasonable accommodation processes going forward.

C. Compensatory damages in the amount of $15,000,000 against Defendants jointly and severally as permitted by law.

D. Punitive damages against Madison, Barill, and Rickabaugh in their individual capacities in the amount of $350,000 each (or such amount as permitted by law).

E. Nominal damages of $1.00, or such other nominal amount as the Court deems appropriate.

F. Costs of suit and all other relief the Court deems just and proper.

## VI. JURY DEMAND

57. Plaintiff demands a trial by jury on all issues so triable.

## VII. CERTIFICATION REGARDING AI USE

58. AI-use disclosure:

Plaintiff certifies that he used artificial intelligence as a drafting/formatting aid. Plaintiff further certifies that all factual statements are asserted in good faith based on Plaintiff's personal knowledge, documents, and information believed to be true, and that Plaintiff has done legal research and reviewed this pleading for accuracy before filing.

Respectfully submitted,

Samir Almudhafer

*Samir Almudhafer*

Plaintiff, pro se

9613 Hazelbrook Ct.

Fredericksburg, VA 22407

+1 (540) 455-7695

pharaoh.samir7@gmail.com

01/09/2026