**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| SAMIR ALMUDHAFER,<br>Plaintiff,<br><br>v.<br><br>SPOTSYLVANIA VOLUNTEER RESCUE SQUAD, *et al.*,<br>Defendants. | ) | Civil Action No. 3:25cv1057 (RCY) |

## MEMORANDUM OPINION

In its Order to Show Cause entered on January 7, 2026, the Court granted *pro se* Plaintiff Samir Almudhafer's application to proceed *in forma pauperis* ("IFP Application") but directed Plaintiff to file an Amended Complaint curing the deficiencies noted in the accompanying Memorandum Opinion. Order, ECF No. 3; Mem. Op., ECF No. 2. Plaintiff was warned that failure to comply with the terms of the Order to Show Cause could result in dismissal of the action. Order, ECF No. 3. On January 9, 2026, the Court received and docketed Plaintiff's Amended Complaint, ECF No. 5,[1] which became the operative Complaint in this action, per the Court's Order to Show Cause. However, the claims in the newly filed Complaint fail to pass muster, and so the Court will dismiss the action.

## I. SUMMARY OF ALLEGATIONS & CLAIMS

Plaintiff enrolled in an EMT-Basic certification course with Defendant Spotsylvania Volunteer Rescue Squad, Inc. ("SVRS") in or about April of 2025. Am. Compl. ¶ 16. Plaintiff was on track to complete the program by late summer, 2025. *Id.* ¶ 18. However, Plaintiff's

[1] The Court also received and docketed a Motion to Received Electronic Notice and Orders (ECF No. 6) and a Motion for Leave to Appear Remotely at Hearings (ECF No. 7). Because the Court finds that dismissal of the Amended Complaint, and thus the action, is appropriate, these motions will be denied as moot.

progress was derailed when SVRS discovered that Plaintiff had a prior non-criminal trespass notice from Mary Washington Hospital, which presented an issue with respect to Plaintiff's ability to access that hospital facility. *Id.* ¶¶ 19–21. Defendant Kimberly G. Madison, SVRS's Chief and EMT Program Coordinator, "sent Plaintiff an email accusing him in substance of 'lying,' 'cheating,' and/or 'falsifying documentation' related to the hospital access issue." *Id.* ¶¶ 9, 21. On or about July 24, 2025, Plaintiff was confronted in a meeting with Madison and [Defendant SVRS Captain Kelly] Barill. Plaintiff was not given written charges, a neutral decision-maker, or a structured hearing process." *Id.* ¶ 23. "On August 2, 2025, during a practical exam session, Madison and Barill pulled Plaintiff aside and informed him he was dismissed from the EMT program effective immediately." *Id.* ¶ 24. Plaintiff received no contemporaneous dismissal notice, no meaningful opportunity to contest the dismissal, and no internal appeal mechanism. *Id.* ¶ 25.

In the wake of his dismissal from the training program, Plaintiff sought records and pursued redress, in the face of which "Defendants escalated their narrative and posture rather than provide transparent documentation or a fair reconsideration process." *Id.* ¶¶ 27–29.

Additionally, Plaintiff alleges that he has ADHD and related conditions and has utilized or is eligible for disability accommodations in standardized testing and regulated education settings. *Id.* ¶ 33. Plaintiff alleges that he requested accommodations from Defendants but "Defendants refused to engage in a fair, interactive process and instead removed Plaintiff in a manner and on a rationale that excluded him from the program and its benefits." *Id.* ¶¶ 36–37.

Based on the foregoing, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violation of his Fourteenth Amendment right to due process (Count One), violation of his First Amendment right to free speech and petition (Count Two), violation of his Fourteenth Amendment right to

equal protection (Count Three), as well as a claim for disability discrimination and failure to accommodate pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Plaintiff levels each count against all four named Defendants, and he seeks declaratory, injunctive, and monetary relief.

## II. STANDARD OF REVIEW

As stated in its prior Memorandum Opinion, ECF No. 2, the Court is obligated to screen complaints filed pursuant to 28 U.S.C. § 1915—the *in forma pauperis* statute—to determine, among other things, whether the complaint states a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) (explaining that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted"). A *pro se* complaint should survive only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pursuant to this statutory screening obligation, the Court has reviewed Plaintiff's Amended Complaint.

## III. ANALYSIS

Although Plaintiff has cured the Rule 8 deficiency noted in the Court's prior Memorandum Opinion and accompanying Show Cause Order, ECF Nos. 2, 3, the Amended Complaint nevertheless fails to state a claim. Specifically, Plaintiff's § 1983 claims fail for lack of state action and claim-specific pleading deficiencies, and his ADA claim fails for apparent failure to exhaust administrative remedies.

### A. SVRS And Its Employees Did Not Act Under Color of State Law

Section 1983 creates a cause of action for a person who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of

state law. 42 U.S.C. § 1983; *see Briggs v. Waters*, 455 F. Supp. 2d 508, 518 (E.D. Va. 2006). The Fourth Circuit has established that a private party can be considered a state actor—that is, acting under color of state law—for purposes of § 1983 if "the deprivation [is] caused by the exercise of some right or privilege created by the State . . . [and] the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Gregg v. Ham*, 678 F.3d 333, 339 n.3 (4th Cir. 2012) (quoting *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982)).

Plaintiff alleges that SVRS "is a Virginia nonprofit corporation operating in Spotsylvania County, Virginia;" that it "provides emergency medical response services as part of Spotsylvania County's emergency services system, performing a traditional public-safety function[;]" that "SVRS operates in coordination with county emergency-response infrastructure (including county stations and county emergency services administration), and its officers function as leadership within that public-safety ecosystem[;]" and that "[t]hrough this delegation and entwinement with county emergency services, SVRS and its leadership acted under color of state law for purposes of § 1983." Am. Compl. ¶¶ 8, 13–15. Plaintiff provides a general citation to *Goldstein v. Chestnut Ridge Volunteer Fire Co*., 218 F.3d 337 (4th Cir. 2000), for its "state action analysis for volunteer public-safety entit[ies]." *Id.* ¶ 15.

In *Goldstein*, the Fourth Circuit summarily determined—

> that Chestnut Ridge, a volunteer fire department in Maryland, is a state actor. We do so because Chestnut Ridge is: (1) carrying out functions, exercising powers, and benefitting from protections traditionally and exclusively reserved to the state; (2) receiving substantial state assistance; (3) subject to extensive state regulation; and (4) considered to be a state actor by the state itself.

*Goldstein*, 218 F.3d at 339–40. Two of these factors are not obvious on the face of Plaintiff's Amended Complaint, and the Court is accordingly unable to apply the reasoning of *Goldstein* to the facts of this case. First, the Court has before it no allegation or information to support the

element that SVRS "receiv[es] substantial state assistance." Furthermore, there is nothing before the Court to suggest that Virginia views SVRS to be a state actor, the way Maryland law was deemed to do in *Goldstein*'s underpinning district court opinion, *see* 984 F. Supp. 367, 370–72 (D. Md. 1997). Standing contrary to *Goldstein* is *Eggleston v. Prince Edward Volunteer Rescue Squad*, a case from this District that was affirmed on appeal, wherein the court determined that the defendant rescue squad was not engaged in state action sufficient to support a § 1983 action, notwithstanding state funding, regulatory oversight, and the public function served by such volunteer organizations. 569 F. Supp. 1344 (E.D. Va. 1983), *aff'd without opinion*, 742 F.2d 1448 (4th Cir. 1984). Accordingly, based on the distinction between the present, conclusory pleadings and the fact- and state law-specific determination in *Goldstein*, the Court sides with *Eggleston* and finds that Plaintiff has not pleaded facts upon which the Court can reasonably infer that SVRS was acting under color of state law when it operated and ultimately dismissed Plaintiff from its EMT-Basic certification course.[2]

**B. Plaintiff Fails to State Claims for Constitutional Violations, Regardless**

Even if the Court were to read-into Plaintiff's Amended Complaint sufficient facts upon which to find that SVRS acted under color of state law at all relevant times, Plaintiff fails to allege actionable constitutional violations. First, Plaintiff does not demonstrate that he had a protected property interest in completing the EMT-Basic certification course—nor is the Court aware of any such protected interest—such that the Court could find a violation of his right to due process. *See, e.g.*, *Lockhart v. Matthew*, 83 F. App'x 498, 499–500 (3d Cir. 2003) (finding no protected property

[2] The Court acknowledges Plaintiff's additional cite to *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n.*, 531 U.S. 288 (2001), for a general "entwinement" theory to support his state action claim. Am. Compl. ¶ 15. But *Brentwood Academy* involved "the pervasive entwinement of public institutions and public officials in [the defendant's] composition and workings"—a factual circumstance not apparent in the present pleadings. The Court accordingly declines to find that *Brentwood Academy* provides a basis for finding state action, here.

interest in an EMT license because it naturally expired and did not automatically renew); *Speck v. City of Phila.*, 2007 WL 2221423, *6 (E.D. Pa. July 31, 2007) (holding that although police officers have a protected interest in continued employment once hired, they do not have a property interest in certification for employment given the fixed term of the license); *Broach v. City of Cincinnati*, 2005 WL 1523374, *1–2 (S.D. Ohio June 28, 2005) (granting summary judgment for the defendant based in part upon defendant's argument that the plaintiff did not have a constitutionally protected property interest in EMT certification). Second, Plaintiff's allegations do not support a plausible inference that he was retaliated against *as a result of* his exercise of any constitutionally protected free speech and/or right to petition. *See* Am. Compl. ¶¶ 45–48. And third, despite Plaintiff's claim that he was "treated more harshly than similarly situated students," his equal protection claim fails for lack of any allegations regarding (1) those purportedly similarly situated students and (2) how his protected characteristics played into Defendants' actions. *Compare id.* ¶ 51 (conclusorily alleging that "Plaintiff's protected characteristics, including Arab ethnicity/national origin and religion, provide a plausible inference that discriminatory animus played a role in Defendants' escalations and disparate treatment," *with Katti v. Arden*, 161 F.4th 217, 228 (4th Cir. 2025) (rejecting § 1983 discrimination claim where the facts alleged in the complaint "had nothing to do with" the relevant protected characteristic, noting, "That [plaintiff] argues [defendants'] actions can 'only be explained' by race does not make it so."). Accordingly, Plaintiff's § 1983 claims fail on claim-specific grounds, as well.

**C. Plaintiff Has Not Demonstrated Administrative Exhaustion**

Count Four, Plaintiff's ADA claim, also fails. Specifically, Plaintiff does not allege facts to show that he exhausted his administrative remedies by filing a charge with the EEOC before filing this suit. *See Hoffman v. Inova Health Care Servs.*, 169 F.4th 207, 218 (4th Cir. 2026)

("Before pursuing a lawsuit under . . . the ADA, a plaintiff must exhaust [his] administrative remedies by filing a charge with the EEOC." (citing, *inter alia*, the ADA's administrative exhaustion requirement, found at 42 U.S.C. § 12117(a))). The Court need not delve past this deficiency to determine whether Plaintiff has failed to state a claim in any additional regard; dismissal is the appropriate remedy. *Id.* at 220.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has once again failed to submit a viable complaint. Because Plaintiff fails to state any claim on which relief may be granted, the Court must dismiss the case. 28 U.S.C. § 1915(e)(2).

An appropriate Order will issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: August 31, 2026
Richmond, Virginia